UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

COREX, S.p.A.,

                      Plaintiff,

          v.

CARGO COMPASS S.p.A.; RELIABLE
SHIPPING SERVICES INC.; M&M
INTERNATIONAL IMPORTS LLC; and
ORLANDO FOOD SALES, INC.,

                      Defendants.

**MEMORANDUM & ORDER**
24-CV-3221 (HG) (CLP)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Corex S.p.A. contracted to sell eleven shipping containers worth of canned tomatoes and pasta to Good Gusto Food Group LLC.  Though the goods were shipped from Italy to the United States, Good Gusto never paid.  Corex brought this suit against two entities involved in the shipping process, as well as two downstream purchasers of the tomatoes, to recover.  Various defendants have also brought cross-, counter-, and third-party claims.

This opinion addresses three outstanding motions.  First, Defendant Reliable Shipping Services Inc., a customs broker, moves to dismiss Corex's claims against it for failure to state a claim.  This motion is GRANTED in part and DENIED in part:  Corex's claims for breach of contract as a third-party beneficiary and for negligence are dismissed, and Corex's claims for trespass to chattels may proceed.  Second, Defendant Cargo Compass S.p.A., a freight forwarder, moves to dismiss Corex's claims against it for *forum non conveniens*, on the grounds that a governing forum-selection clause requires their dispute to be heard in Hong Kong.  This motion is GRANTED.  And third, Corex and its attorneys move to dismiss the counter- and third-party claims brought by Defendants M&M International Imports LLC and Orlando Food Sales, Inc.—

two downstream purchasers of the tomatoes—for failure to state a claim. This motion is GRANTED in part and DENIED in part: the claims for abuse of process are dismissed, and the claims for tortious interference are dismissed as against Corex's attorneys but may proceed against Corex itself.

**BACKGROUND**[1]

## I.    Corex's Factual Allegations

The following facts are taken from Corex's amended complaint and are assumed to be true for the purposes of evaluating Reliable's motion to dismiss.

Corex, an Italian producer and exporter, contracted with Good Gusto, an importer, to ship eight shipping containers worth of canned, peeled tomatoes and three containers of pasta from Italy to Good Gusto in the United States. ECF No. 18[2] ¶¶ 3, 24 (Amended Complaint). The goods were destined for ports in Elizabeth, New Jersey; and Miami, Florida. *Id.* ¶ 28. The goods were sold "Ex Works," meaning Good Gusto was responsible for picking up the goods from Corex's place of business in Italy and transporting them to the United States. *Id.* ¶ 33.

M&M is a customer of Good Gusto. *Id.* ¶ 2. Orlando, in turn, is a customer of M&M. *Id.* ¶ 4. Good Gusto sold the goods to M&M before they were delivered; the shipping instructions therefore provided that the goods be provided to M&M after clearing customs. *Id.*

---

[1]    The Court "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).

[2]    Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

¶ 30.  M&M contracted with Cargo Compass—a freight forwarder—and Reliable—a customs broker—to have the goods shipped.  *Id.* ¶ 34.

Corex, Good Gusto, and Cargo Compass agreed that Corex would retain title to the goods and that no bill of lading would be released until Corex was paid in full.  *Id.* ¶¶ 6, 33.  Corex shipped the goods, but did not receive payment from Good Gusto before the shipments arrived in Elizabeth and Miami.  *Id.* ¶¶ 5, 32.  Because Good Gusto never paid, the containers remained at the Elizabeth and Miami ports.  *Id.* ¶¶ 37, 42.  Corex contacted Cargo Compass and Reliable instructing them to hold the goods and not to release the bill of lading until Corex received full payment.  *Id.* ¶¶ 7, 44, 50–51, 54–57.  In exchange, Corex paid Cargo Compass the cost of shipping for six containers delivered to Miami.  *Id.* ¶¶ 8, 45–49.

At some point, despite Corex never receiving payment from Good Gusto, Cargo Compass released the bills of lading for most or all of the containers, permitting Reliable and other handlers to ship the containers to M&M.  *Id.* ¶¶ 10, 49, 52, 58.

## II.     M&M and Orlando's Factual Allegations

The following facts are taken from M&M and Orlando's counterclaims and are assumed to be true for the purposes of evaluating Corex's motion to dismiss.

M&M and Orlando are wholesalers of various products, including canned, peeled tomatoes; Orlando is one of M&M's customers.  ECF No. 39 ¶¶ 40–42, 45–49 (M&M and Orlando Counterclaims).  M&M contracted with Good Gusto to purchase 28 containers of canned, peeled tomatoes.  *Id.* ¶ 68.  M&M retained the services of Reliable to arrange for the transportation of the containers from Italy to the United States; Reliable in turn retained Cargo Compass.  *Id.* ¶¶ 72–73.  While the purchase and delivery of the first 20 containers proceeded without incident, problems arose with the final eight.  *Id.* ¶¶ 81–89.  Though M&M paid Good

Gusto for the product and Reliable for the transportation as contracted, Good Gusto failed to pay Corex for the goods.  *Id.* ¶¶ 122–24, 136, 142–43, 201–03.

M&M and Orlando allege that, notwithstanding Good Gusto's failure to pay Corex, Cargo Compass was obligated to release the containers to M&M under the terms of their contract.  *Id.* ¶¶ 293–95, 386, 486.  But for the containers that arrived in Elizabeth, Cargo Compass, allegedly because of threats of legal action by Corex, refused to tender the bill of lading required to release the product.  *Id.* ¶¶ 145–46.  M&M alleges that Reliable has been charged significant demurrage fees as a result of the products being stalled at port, which will be passed along to M&M.  *Id.* ¶¶ 150–54.  M&M successfully collected the six containers that arrived in Miami.  *Id.* ¶ 221.

### III.    The Bills of Lading

Good Gusto issued the bills of lading covering the shipment of the goods in this case.  *See* ECF No. 78-1 (Bills of Lading).[3]  The front side of the bills clearly identifies Corex as the "Shipper," Good Gusto as the "Consignee," and Reliable as the party responsible for "delivery." *See id.* at 1, 3.  A declaration on the bottom right corner of the front side states that the goods are "RECEIVED by the Carrier . . . to be transported . . . subject to all the terms and conditions appearing on the front and re[verse] of this Bill of Lading to which the Merchant agrees by accepting this Bill of Lading, any local privileges and custom notwithstanding."  *See id.*  On the back side, the bills contain numerous terms and conditions in fine print, including a provision titled "JURISDICTION AND LAW CLAUSE," printed in bold and all capitalized letters.  *See id.* at 2, 4.  The provision reads, in full, "The contract evidence by or contained in the Bill of

---

[3]    "A bill of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18–19 (2004).

Lading is Governed by Hong Kong law and any claim or dispute arising hereunder or in connection herewith shall be determined by Courts in Hong Kong and no other Courts." *Id.* (spelling errors corrected).

### IV.    Procedural History

The original complaint in this case was filed by Corex on April 30, 2024, while some of the containers were still in transit and the status of others was unknown. *See* ECF No. 1 ¶ 36 (Complaint). Corex moved for a temporary restraining order seeking to prevent M&M from taking ultimate possession of the goods, which the Court denied. *See* ECF No. 8 (Corex's Motion for Temporary Restraining Order); May 1, 2024, Text Order. Corex then withdrew its motion for a preliminary injunction, asserting that the issue of preliminary injunctive relief had become moot. *See* ECF No. 24 (Corex's Letter Withdrawing Motion for Preliminary Injunction).

Corex's operative complaint brings six claims against Cargo Compass, Reliable, M&M, and Orlando: (1) breach of contract against Cargo Compass; (2) breach of contract as a third-party beneficiary against Reliable; (3) breach of terms of bailment against Cargo Compass; (4) negligence against both Cargo Compass and Reliable, all related to their allegedly permitting the containers to be released to M&M; (5) trespass to chattel against all Defendants; and (6) unjust enrichment against M&M and Orlando. ECF No. 18 ¶¶ 59–97, 107–12.

Corex also initially named Mediterranean Shipping Company (USA) Inc., a shipping company involved in the transport of the goods, as a defendant, and brought a seventh cause of action against all Defendants seeking a declaratory judgment naming it the rightful owner of the goods and seeking to prevent the goods from leaving port. *Id.* ¶¶ 18, 98–106. On June 24, 2024, Corex voluntarily dismissed its claims against Mediterranean without prejudice under Federal

Rule of Civil Procedure 41(a)(1)(A)(i).  ECF No. 31 (Notice of Voluntary Dismissal).  And on August 5, 2024, Corex indicated in a pre-motion letter that it "is withdrawing its declaratory judgment cause of action."  ECF No. 53 at 3 (Response to Motion for Pre-Motion Conference).  The Court construes this as a motion to amend the complaint under Rule 15(a)(2) to drop the claim and, so construed, grants it.  *See Robbins v. City of New York*, 254 F. Supp. 3d 434, 437 (E.D.N.Y. 2017) (treating a plaintiff's unambiguously expressed intent to withdraw a single claim in an action as a motion to amend under Rule 15(a)(2)).

M&M and Orlando answered the complaint and brought counterclaims against Corex and third-party claims against Corex's attorneys, Andrea Fiocchi and the law firm Reinhardt Savic Foley LLP, for (1) abuse of process, and (2) tortious interference with contractual relations.  ECF No. 39 ¶¶ 343–406, 655–689, 698–730.  M&M and Orlando also brought cross-claims against Cargo Compass and Reliable for contribution, indemnification, and breach of contract, as well as third-party claims against Good Gusto and its two principals for breach of contract, fraud, fraudulent inducement, and misrepresentation.  *Id.* ¶¶ 407–595.  M&M and Orlando initially brought two additional counter- and third-party claims against Corex and its attorneys for malicious prosecution and vexatious litigation.  *Id.* ¶¶ 237–342, 690–97.  In their opposition to Corex's motion to dismiss, M&M and Orlando indicate that they intend to withdraw these claims.  *See* ECF No. 82 at 9 (Response in Opposition to Motion to Dismiss for Failure to State a Claim).  The Court construes this as a motion to amend M&M and Orlando's counterclaims and third-party complaint under Rule 15(a)(2) to drop the claims and, so construed, grants it.  *See Robbins*, 254 F. Supp. 3d at 437.

Three sets of parties now move to dismiss various sets of claims brought against them. Reliable moves to dismiss Corex's claims against it for failure to state a claim.  *See* ECF No. 74-

1 (Reliable Motion to Dismiss).  Cargo Compass moves to dismiss Corex's claims against it for *forum non conveniens*, invoking a forum-selection clause requiring this dispute to be heard in Hong Kong.  *See* ECF No. 78 (Cargo Compass Motion to Dismiss).  And Corex and its attorneys move to dismiss the counter- and third-party claims brought by M&M and Orlando for failure to state a claim.  *See* ECF No. 81-1 (Corex Motion to Dismiss).

## LEGAL STANDARD

### I.    Rule 12(b)(6)

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

"When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).  The Court must accept all facts alleged in the complaint as true, but it need not adopt "mere conclusory statements" or "threadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." *Iqbal*, 556 U.S. at 678–79.

## II.    Forum-Selection Clause

"Under the principle of *forum non conveniens*, a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Fasano v. Li*, 47 F.4th 91, 100 (2d Cir. 2022). In cases not involving a forum-selection clause, a court "must assess (1) the deference to be accorded the plaintiff's choice of forum; (2) the adequacy of the alternative forum proposed by the defendants; and (3) the balance between the private and public interests implicated in the choice of forum." *Rabinowitz v. Kelman*, 75 F.4th 73, 80 (2d Cir. 2023). The court must determine "whether, on balance, a transfer would serve the convenience of parties and witnesses and otherwise promote the interest of justice." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63, 66 n.8 (2013) (quoting 28 U.S.C. § 1404(a)).

"The *forum non conveniens* calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Fasano*, 47 F.4th at 100. "[T]he doctrine's usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum." *Martinez v. Bloomberg LP*, 740 F.3d 211, 218 (2d Cir. 2014). When determining whether to dismiss for *forum non conveniens* on the basis of a forum-selection clause, courts in this Circuit "employ a four-part framework." *Rabinowitz*, 75 F.4th at 81.

> At the first three steps, the court asks (1) whether the clause was reasonably communicated to the party resisting enforcement, (2) whether the clause is mandatory, that is, whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so, and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. If the answer to all three questions is yes, the clause is presumptively enforceable. At the fourth step, the court asks (4) whether the resisting party has rebutted that presumption by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Id.*

When considering whether enforcement of a presumptively enforceable forum-selection clause would be unreasonable or unjust, "a showing of mere inconvenience to parties or witnesses is not sufficient; indeed, the court should consider arguments about public-interest factors only." *Fasano*, 47 F.4th at 101; *see Atl. Marine*, 571 U.S. at 64 ("[A] court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests.").

## DISCUSSION

### I.    Reliable's Motion to Dismiss

Reliable moves to dismiss all of Corex's claims against it for failure to state a claim.  The motion is granted in part and denied in part.  Corex's claims for breach of contract as a third-party beneficiary and for negligence are dismissed, and Corex's claim for trespass to chattels may proceed.

#### A.    *Breach of Contract as a Third-Party Beneficiary*

Under New York law, which Reliance and Corex appear to agree applies, "[a] party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006).  "To show that an enforceable contract existed, the claimant must plead facts surrounding the formation of the contract such as the date the parties entered into the contract, the major terms of the contract, the parties to the contract, and that the party to be bound assented to the contract." *Toretto v. Donnelley Fin. Sols., Inc.*,

583 F. Supp. 3d 570, 601 (S.D.N.Y. 2022); *see Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 104 (2d Cir. 2012) ("Without providing additional factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms, the proposed amended complaint similarly fails to sufficiently plead the existence of a contract."). "Conclusory allegations that a contract existed or that it was breached do not suffice." *Emerald Town Car of Pearl River, LLC v. Phila. Indem. Ins.*, No. 16-cv-1099, 2017 WL 1383773, at *7 (S.D.N.Y. Apr. 12, 2017).

Corex has not plausibly pleaded the existence of any underlying contract between Reliable and another party. Corex pleads that "Good Gusto and/or M&M, on the one hand, and Reliable, on the other hand, entered into an enforceable agreement for the shipment and clearance through customs of the Goods from Corex in Italy to the United States." ECF No. 18 ¶ 66; *see id.* ¶¶ 23, 34. In addition to failing to definitively identify the counterparties to the purported contract, the complaint contains no allegations regarding the contract's terms or the details surrounding its formation. Simply stating that a contract existed is too vague an allegation to plausibly establish the existence of a contract, *see, e.g.*, *Toretto*, 583 F. Supp. 3d at 601; *Emerald Town Car of Pearl River, LLC*, 2017 WL 1383773, at *7–8; *Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 312–13 (S.D.N.Y. 2014), let alone that Corex was an intended third-party beneficiary to that contract. Accordingly, Corex's claim for breach of contract as a third-party beneficiary against Reliable is dismissed for failure to state a claim.

## B. Negligence

Corex's negligence claim is dismissed as barred by New York's economic loss doctrine. Under the economic loss doctrine, "a party to a contract that suffers economic loss only . . . is, in most cases, limited to recovery pursuant to a claim for breach of contract and cannot recover

economic or consequential damages in tort." *Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*, 937 F. Supp. 2d 355, 361 (E.D.N.Y. 2013). "[T]he economic loss doctrine serves two purposes: (1) it protects defendants from disproportionate, and potentially limitless, liability; and (2) it disentangles contract and tort law by restricting plaintiffs who suffer economic losses to the benefits of their bargains." *King County v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 302 (S.D.N.Y. 2012).

Corex does not dispute that it suffered exclusively economic damages, nor that its claims sound essentially in contract. Instead, Corex argues only that the economic loss doctrine should not apply to its claims because Corex lacks a contract remedy against *Reliable*. *See* ECF No. 75 at 10–11 (Corex's Opposition to Reliable's Motion to Dismiss). "This argument misunderstands the economic loss doctrine—the unavailability of a contract remedy does not automatically trigger an exception to the rule." *IKB Deutsche Industriebank AG*, 863 F. Supp. 2d at 303; *see, e.g.*, *Travelers Cas. & Sur. Co. v. Dormitory Auth.–State of N.Y.*, 734 F. Supp. 2d 368, 377–79 (S.D.N.Y. 2010) (applying the economic loss doctrine to bar plaintiff's negligence claim against a defendant while also holding that it could not recover under breach of contract against that defendant as a third-party beneficiary); *Am. Fin. Int'l Grp.-Asia, L.L.C. v. Bennett*, No. 05-cv-8988, 2007 WL 1732427, at *2–3 (S.D.N.Y. June 14, 2007) (dismissing plaintiffs' negligence claim based on the economic loss doctrine while also dismissing plaintiffs' breach-of-contract claim because no contract existed). Here, where Plaintiff alleges that a contract exists, the economic loss doctrine requires that it "seek its remedy through a breach-of-contract action . . . rather than against parties with whom [Corex] did not enter into contract." *Travelers Cas. & Sur. Co.*, 734 F. Supp. 2d at 379. Accordingly, Corex's negligence claim against Reliable is dismissed on the basis of New York's economic loss doctrine.

C.    *Trespass to Chattels*

Under New York law, "[t]he essential elements of trespass to chattels are (1) intent, (2) physical interference with (3) possession (4) resulting in harm." *DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 283 (S.D.N.Y. 2014).  One court, as Reliance observes, has understood the harm element to mean "harm to [the] condition, quality or material value of the chattels at issue."  *"J. Doe No. 1" v. CBS Broad. Inc.*, 806 N.Y.S.2d 38, 39 (App. Div. 2005).  But that position does not foreclose other harms.  Other New York courts recognize a trespass claim when an owner is "deprived of the use of the chattel for a substantial time."  *Sch. of Visual Arts v. Kuprewicz*, 771 N.Y.S.2d 804, 808 (Sup. Ct. 2003) (quoting Restatement (Second) of Torts § 218, cmt. e (Am. L. Inst. 1965)); *Jackie's Enters., Inc. v. Belleville*, 87 N.Y.S.3d 124, 131 (App. Div. 2018); *see, e.g.*, *Sweeney v. Bruckner Plaza Assocs.*, 869 N.Y.S.2d 453, 455 (App. Div. 2008) (permitting trespass claim regarding illegally towed van where only source of damages arose from pneumonia plaintiff developed in retrieving the van from lot).

Corex has pleaded a plausible claim for trespass to chattels.  The complaint alleges that Reliable intentionally "ensured that the [containers of tomatoes at issue] cleared customs" despite "being aware that Corex is the owner" of them.  ECF No. 18 ¶¶ 51–52.  It also alleges that each party took possession of the containers as they moved through the chain of commerce—which plausibly alleges intentional interference with Corex's property.  *Id.* ¶ 89. Corex further alleges that it suffered harm.  Because of Reliable's alleged actions, Corex is now "unaware of the location of the" containers, which may have been "transported elsewhere in the

United States." *Id.* ¶¶ 52–53.  Taking those pleadings as true, Reliable dispossessed Corex of its use of the chattels for a substantial time.[4]

To be sure, the nature of the interference alleged (complete dispossession rather than mere interference) may suggest that Corex's claim sounds in conversion rather than trespass. But at this stage, Corex's claim may proceed however denominated.  A conversion occurs when a defendant intentionally exercises dominion over or interferes with property "in defiance of the plaintiff's rights," *Di Siena v. Di Siena*, 698 N.Y.S.2d 93, 95 (App. Div. 1999), whereas a trespass requires only "physical interference with" possession, *Sweeney v. Bruckner Plaza Assocs. LP*, 875 N.Y.S.2d 824, at *4 (Sup. Ct. July 12, 2004) (unpublished table decision). Therefore, a defendant who escalates from "merely interfer[ing] with" a person's use of property to destroying or taking it becomes liable for conversion too.  *See Sporn v. MCA Recs., Inc.*, 448 N.E.2d 1324, 1326 (N.Y. 1983).  Accordingly, courts in this Circuit have often treated claims for trespass to chattels and for conversion interchangeably.  *See, e.g.*, *DeAngelis*, 17 F. Supp. 3d at 283 ("[T]he elements of a trespass-to-chattels claim are substantially similar to the elements of a conversion claim."); *City of Amsterdam v. Daniel Goldreyer, Ltd.*, 882 F. Supp. 1273, 1280–81 (E.D.N.Y. 1995) (analyzing a trespass to chattels claim identically to a conversion claim); *see also* Restatement (Second) of Torts § 217 (Am. L. Inst. 1965) (recognizing that a trespass to chattel "may be committed by intentionally . . . dispossessing another of the chattel").  Under either theory, Plaintiff states a plausible claim for relief.

---

[4]    Reliable does not argue that the economic loss doctrine applies to Corex's claim for trespass to chattels.  That makes sense.  "New York courts have long routinely permitted fraud claims for pure economic loss to proceed."  *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 432 (S.D.N.Y. 2017) (collecting cases in New York courts); *First Bank of Ams. v. Motor Car Funding, Inc.*, 690 N.Y.S.2d 17, 21–22 (App Div. 1999).

## II.     Cargo Compass's Motion to Dismiss

Cargo Compass moves to dismiss Corex's claims against it for *forum non conveniens*, invoking the forum-selection clause contained in the bills of lading.  The motion is granted.

### A.     *The forum-selection cause is presumptively enforceable.*

The forum-selection clause contained in the bills of lading is presumptively enforceable. First, the clause was reasonably communicated to Corex.  At Corex's own request, Corex is listed as the "shipper" on the bills of lading, and its complaint invokes and relies on the bills of lading.  *See* ECF No. 18 ¶ 33; ECF No. 78-1 at 1, 3.  The mandatory terms and conditions of the bills contain a clearly labeled "JURISDICTION AND LAW CLAUSE" that identifies Hong Kong as the exclusive forum for all disputes.  This is sufficient to provide notice of the contents of the clause to Corex.  *See Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9–10 (2d Cir. 1995) (upholding similarly presented forum-selection clause found on the back of an airline ticket); *Fed. Ins. v. M/V CMA CGM MARLIN*, No. 9-cv-1409, 2010 WL 727217, at *2 & n.4 (S.D.N.Y. Feb. 23, 2010) (same, for a clause printed on a bill of lading).

Second, the clause is mandatory.  A forum-selection clause is mandatory "when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007).  Here, the clause states that any claims are to be "determined by Courts in Hong Kong *and no other Courts*," ECF No. 78-1 at 2, 4, clearly evincing an intent to have Hong Kong be the exclusive forum for all disputes.

Third, Corex and its claims are subject to the forum-selection clause.  Corex argues that it is not a signatory to the bills of lading and that, even if it were, the claims it brings against Cargo Compass in this action are not covered by the forum-selection clause.  *See* ECF No. 79 at 8–11 (Corex's Opposition to Cargo Compass's Motion to Dismiss).  Neither argument succeeds.

The parties agree that the bills of lading are subject to the Carriage of Goods by Sea Act ("COGSA"). *See id.* at 11–12; ECF No. 80 at 3 (Cargo Compass's Reply in Support of Motion to Dismiss). "COGSA governs the terms of bills of lading issued by ocean carriers engaged in foreign trade" and "requires each carrier to issue to the cargo owner a bill that contains certain terms." *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 96 (2010) (citing 46 U.S.C. § 30701 note). "Although COGSA imposes some limitations on the parties' authority to adjust liability, it does not limit the parties' ability to adopt forum-selection clauses." *Id.* In *Stolt Tank Containers, Inc. v. Evergreen Marine Corp.*, the Second Circuit explained that "once a party issues a bill of lading, *goods* covered by that bill of lading become subject to" COGSA's liability-allocating provision. 962 F.2d 276, 279 (2d Cir. 1992). The Second Circuit specifically rejected the argument that a non-signatory to a bill of lading should be excused from the liability-allocating provisions contained therein because such an outcome "would defeat COGSA's intended purposes of allocating risk of loss and creating predictable liability rules on which not only carriers but others can rely." *Id.* Accordingly, "where a party is aware that another is shipping its packages aboard a vessel and has at least constructive notice that liability limitations might apply, that party is bound by the liability limitations agreed to by the shipper." *Id.* at 280. As other district courts have concluded, "*Stolt*'s reasoning would appear to apply to" a forum-selection clause contained in a bill of lading. *Jockey Int'l, Inc. v. M/V "LEVERKUSEN EXPRESS,"* 217 F. Supp. 2d 447, 456 (S.D.N.Y. 2002); *see MTS Logistics, Inc. v. Innovative Commodities Grp., LLC*, 442 F. Supp. 3d 738, 753 (S.D.N.Y. 2020) ("[C]ourts in this Circuit have consistently held that intermediaries . . . can commit cargo owners to a forum selection clause in a downstream carrier's bill of lading.") (citing cases). Accordingly, Corex—which, again, specifically injected itself into the bill of lading in order to protect its own title to the

goods being shipped—is bound by the forum-selection clause contained in the bill of lading, even as a non-signatory.

Though Corex argues that its claims against Cargo Compass in this suit are not related to the bills of lading, the Court disagrees. The meanings of the terms "arising hereunder" and "in connection herewith" in the forum-selection clause here are broad and are "not restricted to pure breaches of the contracts containing the clauses." *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993); *see also Coregis Ins. v. Am. Health Found., Inc.*, 241 F.3d 123, 128–29 (2d Cir. 2001) (concluding that the meaning of "in connection with" is broader than the meaning of "arise from"). Plaintiff's complaint alleges that Cargo Compass improperly released the bills of lading to Reliable, MSC, or other handlers in contravention of duties owed to Corex, the legal owner of the goods. Corex's claims both "arise" from and are "in connection" with the bills of lading, given that Corex's claims stem from the allegedly improper release of those bills by Cargo Compass to the other parties in this suit.

Because the forum-selection clause was reasonably communicated to Corex, is mandatory, and covers the parties and claims at issue, it is "presumptively enforceable." *Rabinowitz*, 75 F.4th at 81.

> **B.** *Cargo Compass does not overcome the presumption of enforceability.*

Corex cannot defeat application of the forum-selection clause because it has not "ma[de] a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* This requirement renders an otherwise valid forum-selection clause unenforceable only if "(1) its incorporation was the result of fraud or overreaching, (2) the law to be applied in the selected forum is fundamentally unfair, (3) enforcement contravenes a strong public policy of the forum in which suit is brought, or

(4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Id.* at 81 n.6.  These exceptions are "interpreted narrowly." *S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 711 (2d Cir. 2010).

None of Corex's arguments against enforcement of the forum-selection clause succeeds. Corex cites *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981), for the proposition that on a motion to dismiss for *forum non conveniens*, there is ordinarily "a strong presumption in favor of the plaintiff's choice of forum," and argues that it is Cargo Compass's burden to defeat this presumption.  *See* ECF No. 79 at 13.  This is backwards.  *Piper Aircraft Co. v. Reyno* was not a forum-selection clause case; in cases involving forum-selection clauses, "the plaintiff's choice of forum merits *no* weight" and the presumption flips, giving the forum designated by the clause "controlling weight in all but the most exceptional cases."  *Atl. Marine*, 571 U.S. at 63.

Corex invokes the many reasons hearing this case in Hong Kong would be an inconvenient forum to try this case.  *See* ECF No. 79 at 12–13 (stating that Hong Kong is a "difficult and inconvenient forum" located far from the events, witnesses, and evidence in this case); *Atl. Marine*, 571 U.S. at 62 n.6 (listing as examples of private interests the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive").  Once again, the Court may not consider many of these arguments against application of the forum-selection clause, as they relate only to the parties' private interests.  *See Atl. Marine*, 571 U.S. at 64 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.  A court accordingly must

17

deem the private-interest factors to weigh entirely in favor of the preselected forum.").  Plaintiff fails to identify any unique reasons that Hong Kong and its courts are unavailable as a forum such that Plaintiff will essentially be denied its day in court.  *See Phillips*, 494 F.3d at 393 (rejecting argument based on hardship of litigating in a foreign forum where the only "claimed hardships are . . . obvious concomitants of litigation abroad").

Corex argues that it was the victim of a fraudulent scheme orchestrated by Good Gusto to take possession of the goods without paying, and that the forum-selection clause in the bills of lading should therefore not be enforced against Corex.  *See* ECF No. 79 at 13–14.  But a party may not defeat application of a forum-selection clause by alleging that "the forum selection clause is invalid because it was part of a larger fraudulent scheme." *Bank v. Laptop & Desktop Repair LLC*, 206 F. Supp. 3d 772, 780 (E.D.N.Y. 2016) (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.4 (1974)).  Instead, this exception applies only when "the forum selection clause itself was specifically procured by fraud," *id.* at 781, which Corex has not argued or alleged.

Finally, the risk that "multiple simultaneous litigations regarding these issues could result in contradictory decisions," ECF No. 79 at 5, does not render this the extraordinary case where the forum-selection clause must be overridden.  "The possibility of multiple parallel proceedings" is a foreseeable and unavoidable outcome of forum-selection clauses such as these, and "[r]efusing to enforce a forum selection clause on this basis would undermine whatever measure of certainty such clauses bring to the international shipping transactions in which they are commonly employed." *St., Sound Around Elecs., Inc. v. M/V Royal Container*, 30 F. Supp. 2d 661, 663 (S.D.N.Y. 1999).  "[O]ur twin commitments to upholding forum selection clauses where these are found to apply and deferring to a plaintiff's proper choice of forum" mean that

18

courts will uphold forum-selection clauses applying to some, but not all, claims in an action even when the result is parallel, "fractured litigation" in separate forums. *Phillips*, 494 F.3d at 393.

*    *    *

In sum, the forum-selection clause contained in the bills of lading designating Hong Kong as the exclusive forum binds Corex, the clause covers Corex's claims against Cargo Compass in this case, and Corex has not made a strong showing that it is unenforceable. Cargo Compass's motion to dismiss Corex's claims against it for *forum non conveniens* is granted.

## III.    Corex's Motion to Dismiss

Corex and its attorneys move to dismiss M&M and Orlando's counter- and third-party claims for failure to state a claim. The motion is granted as to the counter- and third-party claims for abuse of process as to Corex and its attorneys, Andrea Fiocchi and the law firm Reinhardt Savic Foley LLP, as well as to the third-party claims for tortious interference with contractual relations brought against Corex's attorneys. The motion is denied as to the counterclaims for tortious interference brought against Corex itself.[5]

### A.    Abuse of Process

Under New York law, an abuse of process claim requires "(1) regularly issued process,

---

[5]    The Court agrees with Corex that M&M and Orlando's opposition brief to Corex's motion to dismiss is confusing and largely nonresponsive to the arguments made in Corex's motion. However, the Court denies Corex's request to dismiss M&M and Orlando's claims as abandoned. Even if the Court were to deem Corex's motion effectively unopposed, the Court would still bear the obligation to examine the pleadings itself and determine whether M&M and Orlando have failed to state a claim upon which relief can be granted. *See McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000); *Goldberg v. Danaher*, 599 F.3d 181, 183–84 (2d Cir. 2010). This case is unlike the cases cited in Corex's reply, where courts inferred abandonment from a party's decision to defend some, but not all, claims in an opposition to a motion to dismiss. *See Maroney v. Woodstream Corp.*, 695 F. Supp. 3d 448, 468 (S.D.N.Y. 2023); *Laface v. E. Suffolk BOCES*, No. 18-cv-1314, 2019 WL 1959489, at *8 (E.D.N.Y. May 2, 2019). Here, it is clear from M&M and Orlando's response that they have not abandoned their abuse-of-process and tortious interference claims.

either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984).  Additionally, the plaintiff "must allege and prove actual or special damages." *Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Tchrs. Ass'n, Inc.*, 343 N.E.2d 278, 284 (N.Y. 1975).

M&M and Orlando's counter- and third-party claims for abuse of process are based solely on Corex's initiation of the present lawsuit.  *See* ECF No. 39 ¶¶ 358–64, 673–80.  "[T]he institution of a civil action by summons and complaint is not legally considered process capable of being abused." *Curiano*, 469 N.E.2d at 1326.  Accordingly, "a claim for abuse of process cannot lie solely on the commencement of a civil action." *Brown v. Brown*, 343 F. Supp. 2d 195, 198 (E.D.N.Y. 2004); *accord PSI Metals, Inc. v. Firemen's Ins. Co. of Newark*, 839 F.2d 42, 43 (2d Cir. 1988) (per curiam).  M&M and Orlando's counter- and third-party claims for abuse of process are dismissed as to all parties.

### B.   Tortious Interference with Contractual Relations

Under New York law, a claim for tortious interference with contractual relations requires "(1) the existence of a valid contract between the plaintiff and a third party, (2) defendant's knowledge of that contract, (3) defendant's intentional procurement of the third-party's breach of the contract without justification, (4) actual breach of the contract, and (5) damages resulting therefrom." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126–27 (2d Cir. 2019) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996)).  Corex does not dispute that M&M and Orlando have adequately alleged that contracts existed between Cargo Compass and M&M (for Cargo Compass to release the containers to M&M), between M&M and Orlando (for M&M to deliver the tomatoes), and between Orlando and downstream customers

20

(to distribute the tomatoes); that Corex and its attorneys knew of those contracts; that Corex intentionally caused Cargo Compass and M&M to breach those contracts with respect to the containers arriving at the Elizabeth port; and that M&M and Orlando were damaged as a result. At issue is whether Corex "was permitted to protect its own interest" in the containers by interfering with M&M and Orlando's downstream contracts.  *See* ECF No. 81-1 at 23–24.

"Liability for tortious interference may be cut off if the conduct was justified." *Rich*, 939 F.3d at 129.  Under this rule, also dubbed an "economic interest defense," a defendant may act "to protect its own legal or financial stake in the breaching party's business." *White Plains Coat & Apron Co. v. Cintas Corp.*, 867 N.E.2d 381, 383 (N.Y. 2007).[6]  The New York Court of Appeals has given examples of the types of relationships that may give rise to an economic interest:  "where defendants were significant stockholders in the breaching party's business; where defendant and the breaching party had a parent-subsidiary relationship; where defendant was the breaching party's creditor; and where the defendant had a managerial contract with the breaching party at the time defendant induced the breach of contract with plaintiff." *Id.* at 383–84.  If the defense or justification applies, a "plaintiff may overcome [it] only if the defendant acted out of malice on the one hand, or used fraudulent or illegal means on the other." *RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*, 692 F. Supp. 3d 135, 144 (S.D.N.Y. 2023) (quoting *Foster v. Churchill*, 665 N.E.2d 153, 157 (N.Y. 1996)).  "Thus, when a complaint supports a defendant's economic interest in the breaching party's business, it is insufficient for a complaint merely to allege the elements of tortious interference; rather, the plaintiff must also adequately

---

[6]     It is unclear whether the "economic interest defense" is an affirmative defense, *White Plains*, 867 N.E.2d at 383, or an element of the tortious interference cause of action.  *Rich*, 939 F.3d at 126–27.  Because the allegations in the counterclaim plausibly establish that Corex acted without justification even if the lack of economic interest were an element for Plaintiff to prove, this Court need not decide the issue.

allege that the defendant either acted maliciously, fraudulently, or illegally." *Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, 259 F. Supp. 3d 16, 30 (S.D.N.Y. 2017).

Corex is plausibly entitled to the economic interest defense. While Corex sought to protect its interest in *the tomato containers* rather than in Cargo Compass's business, courts in this Circuit and in New York "have not limited the economic interest defense to direct ownership situations." *Vinas v. Chubb Corp.*, 499 F. Supp. 2d 427, 432–33 (S.D.N.Y. 2007). Relevant here, they have extended the defense to cover situations where a defendant acts to protect its *own* property. *Id.* (extending defense to bond issuer who induced bondholder to breach contract for services with accountant—so bondholder would be in a better position financially had it defaulted on the bonds); *Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*, 579 N.Y.S.2d 353, 353–54 (App. Div. 1992) (extending defense to bank that enforced securities agreement against debtor by "receiving and retaining purported accounts receivable," which disrupted debtor's contracts with plaintiff); *see also Imtrac Indus., Inc. v. Glassexport Co.*, No. 90-cv-6058, 1996 WL 39294, at *7 (S.D.N.Y. Feb. 1, 1996) (characterizing the defense as a "self-interest exception"). So too here. Corex acted to protect its title to the containers that arrived at the Elizabeth port until it was paid by Good Gusto, which plausibly establishes an entitlement to the economic interest defense. ECF No. 81-1 at 19–20.

But at this juncture of the suit, the Court must assume the truth of the allegations in the counterclaim. *See Walker Process Equip., Inc. v. Food Mach & Chem. Corp.*, 382 U.S. 172, 174–75 (1965). M&M and Orlando allege that Corex *had* no legal interest in the goods, as it had relinquished its title to the containers once they were shipped pursuant to an "ex works" contract. So even if the economic interest defense might apply as a matter of law, it might not apply as a matter of (alleged) fact. Accordingly, M&M and Orlando state a plausible claim for relief.

However, the third-party claims for tortious interference brought against Corex's attorneys are dismissed. The conduct relevant to the tortious interference claim in M&M and Orlando's third-party complaint is attributed solely to Corex. *See* ECF No. 39 ¶ 146 ("Plaintiff Corex threatened Defendant, Cargo Compass that if it released the original Bill of Lading, it would take legal action against Cargo Compass."). Fiocchi and Reinhardt Savic Foley LLP may not be held liable on M&M and Orlando's tortious interference claim against Corex solely by virtue of their acting within the scope of their authority as Corex's attorneys. *See Burger v. Brookhaven Med. Arts Bldg., Inc.*, 516 N.Y.S.2d 705, 708 (App. Div. 1987) ("Absent a showing of fraud or collusion, or of a malicious or tortious act, an attorney is not liable to third parties for purported injuries caused by services performed on behalf of a client or advice offered to that client.").

Accordingly, M&M and Orlando's third-party claims for tortious interference with contractual relations against Corex's attorneys, Andrea Fiocchi and the law firm Reinhardt Savic Foley LLP, are dismissed. The motion to dismiss M&M and Orlando's counterclaim for tortious interference against Corex itself is denied.

\*    \*    \*

The following claims remain at this stage. Corex voluntarily dismissed its claims against Mediterranean and withdrew its declaratory judgment claim as to all parties. ECF No. 31; ECF No. 53 at 3. The Court dismisses Corex's breach of contract and negligence claims against Reliable, along with Corex's claims against Cargo Compass. Corex's claims for trespass to chattels against Reliance, M&M, and Orlando, however, may proceed. The Court also declines to address Corex's unjust-enrichment claim against M&M and Orlando, who have not moved to dismiss.

23

For their part, M&M and Orlando withdraw their malicious-prosecution and vexatious-litigation counter-claims. ECF No. 84 at 9. The Court dismisses M&M and Orlando's abuse-of-process claims, as well as their tortious interference with contract claim against Corex's attorneys. However, M&M and Orlando's tortious interference counter-claim against Corex itself survives. The Court declines to address M&M and Orlando's cross-claims against Reliable and Cargo Compass for indemnification, contribution, and breach of contract, as the latter parties did not file a motion to dismiss.

Finally, the Court declines to address M&M and Orlando's third-party claims for breach of contract, fraud, fraudulent inducement, and misrepresentation against Good Gusto and its officers, who have not appeared in this case. The Court observes that under Rule 4(m) of the Federal Rules of Civil Procedure, a plaintiff must serve defendants with a summons within 90 days of filing the complaint. More than 90 days have elapsed. By December 10, 2025, M&M and Orlando are directed to file proof of service on the docket showing that service was accomplished on the remaining third-party defendants within the time allowed under Rule 4(m), or show cause why the case should not be dismissed as to those defendants for failure to serve under Rule 4(m).

## <u>CONCLUSION</u>

For the foregoing reasons, defendant Reliable Shipping Services Inc.'s motion to dismiss is GRANTED in part and DENIED in part:  Plaintiff Corex S.p.A.'s claims for breach of contract as a third-party beneficiary and for negligence are dismissed, but Corex's claim for trespass to chattels may proceed.  Defendant Cargo Compass S.p.A.'s motion to dismiss Corex's claims for *forum non conveniens* based on the forum-selection clause contained in the bills of lading is GRANTED.  Corex and its attorneys' motion to dismiss the counter- and third-party claims brought by Defendants M&M International Imports LLC and Orlando Food Sales, Inc. is GRANTED in part and DENIED in part:  M&M and Orlando's claims for abuse of process are dismissed, and their claims for tortious interference are dismissed as to Corex's attorneys but may proceed as to Corex itself.

SO ORDERED.

*/s/ Hector Gonzalez*

HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
November 11, 2025